IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   : | |
| : | |
| Plaintiff,   : | |
| : | |
| v.   : | CASE NO. |
| : | 1:23-cr-00335-MLB-RGV |
| : | |
| MARIO EARL,   : | |
| : | |
| Defendant.   : | |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTIONS TO SUPPRESS EVIDENCE SEIZED AT 10 CENTER STREET**

Defendant Earl replies as follows to the government's opposition [Doc. 340]:

## STANDING

The government contends that Earl has failed to establish standing to challenge the search of the premises at 10 Center Street on July 8, 2022. It argues that Earl's affidavit should be disregarded because he failed to testify and face cross-examination. But two cases cited by the government on page 13 of its opposition actually support the Court's consideration of his affidavit to establish standing.*

---

* The other cited cases are inapposite because their factual scenarios are readily distinguishable. The government either attempted unsuccessfully to call the defendant as a witness because the defendant claimed his 5th amendment right or the government contested the truth of the facts averred in the defendant's affidavit.

The affidavit was admitted in evidence *without objection* at the suppression hearing on June 16, 2025. Docs. 322; 324 at 54-55; 329-92. At no time during the hearing or in its opposition did the government dispute or challenge the truth of the facts averred in the affidavit. In *United States v. Williams*, 536 F.2d 810, 812-13 (9th Cir. 1976), one of the cases cited by the government, the court noted: "As the Government conceded during oral argument, an undisputed affidavit, or undisputed affidavits, alleging facts that demonstrate a legitimate proprietary or possessory interest in the premises searched, could establish one's standing without his being required to testify." The court went on to cogently recognize that "[c]ertainly, neither *Jones v. United States*, 362 U.S. 257 (1960), nor *Simmons v. United States*, 390 U.S. 377 (1968), requires that in all cases a defendant must himself testify at a suppression hearing in order to establish his standing. Uncontroverted facts set forth by affidavit may well suffice." *Id*. at 813 (cleaned up).

In a second case cited by the government, *United States v. Terry*, 2007 WL 496630 n.9 (S.D.Ga. 2007), the court insightfully observed: "Of course, a defendant's affidavit may suffice to establish his legitimate expectation of privacy where the government either does not contest standing or *fails to offer any evidence at the suppression hearing that calls into question the factual averments of that affidavit*." (emphasis added). The government failed to do so here.

Earl's affidavit states, Doc. 329-92, ¶¶ 3 and 7-12:

2

3. In June 2022, Elisa leased a few residential homes in the New Jersey area, including the 10 Center Street residence. Elisa provided me a key to the 10 Center Street address and allowed me unfettered access to the home because I was her boyfriend of 14-plus years at that time (now 16-plus years).

7. On July 6, 2022, I flew back to New York from Atlanta and stayed at the 10 Center Street address. I used the key that Elisa had provided back in June 2022 when I visited New York/New Jersey with my son. My plan was to stay there for a couple of days and then fly back to Atlanta.

8. When I arrived on the 6th at the 10 Center Street residence, I gained access into the home with the key that Elisa provided me. I had my luggage with me, my medication, and other miscellaneous items such as my computer, etc. I stayed there that entire evening.

9. When I woke up on the 7th, I traveled to the local Starbucks around approximately 8 a.m. and ordered a coffee and then traveled back to the 10 Center Street residence. I then traveled into the City (New York) to visit with friends.

10. I had plans to return to the 10 Center Street address later that evening, as evidenced by me leaving my clothing, backpack with initials MJE, my medication, other personal items. See SA Leyva's WDWA SW Affidavit attached to Motion to Adopt as Exhibit E, ¶¶9-10. [**admitted at the hearing as Doc. 329-91**].

11. Unfortunately, a shooting occurred at the 10 Center Street location to which the police responded. I was in the City at the time of the shooting. When the police responded, they shutdown access to the 10 Center Street residence by tapping it off with yellow crime tape and no one could go inside.

12. After the police conducted their investigation, I returned to the 10 Center Street residence and gained access into the residence by using the key that Elisa provided me. The purpose of my return to the location was to determine whether any of my personal belongings were still there. Upon my entry into the residence, I discovered that none of my personal belongings were still at the location.

3

These facts are uncontroverted by the government and are corroborated by defense exhibits admitted at the suppression hearing. Docs. 329-89 (photo of coffee cup with Mario printed on label); 329-90 (Delta records reflecting Earl flew on Delta flight 549 from Atlanta to NYC (LaGuardia Airport – LGA) on July 6, 2022); 329-91 at 13-14, ¶ 10 (SA Leyva's WDWA SW Affidavit):

> Starbucks cup bearing the name 'Mario' on the printed label was found in one of the bedrooms of the stash house. The coffee was purchased from a nearby Starbucks via EARL'S Starbucks Mobile app on the same day as the robbery. A review of surveillance footage from the Starbucks verified that EARL purchased the coffee earlier that morning. In the same bedroom, law enforcement located a bag with the embroidered initials "MJE," (Mario James Earl) which contained medication prescribed to EARL.

Earl submits these facts satisfy his burden of proving he had a reasonable expectation of privacy in the premises at 10 Center Street and thus standing to challenge its search. They establish he was a permitted guest (overnight and otherwise) at the residence, with a key provided him by Elisa, the lessee; that he had spent the night at the residence on July 6, 2022; that he was at the premises on the morning of July 7, 2022; and that he returned there after the shooting investigation ended.

Additionally, Earl adopts the standing arguments made by co-defendant Washington in his reply; particularly, as they relate to the government's unproven claim that 10 Center Street was nothing more than a stash house. Doc. 386 at 1-9.

4

Earl previously adopted Washington's arguments made in Doc. 187, Washington's preliminary motion to suppress evidence. *See* Docs. 213 & 213-1.

## **SEARCH OF LOCKED SAFES**

The government first contends on page 17 of its opposition that even if Earl was an overnight guest, he did not have standing to contest the search of the two locked safes. This is incorrect. An overnight guest has standing to challenge the search of the entire premises, which would include the locked safes. *United States v. Osorio*, 949 F.2d 38, 41 (2nd Cir. 1991) (overnight guest had standing to challenge search of entire premises absent proof that the host restricted his movements). Earl had been provided a key to 10 Center Street by the lessee, Elisa. He had unrestricted access to and movement in the premises as reflected by where his personal items were found by law enforcement. *See* Doc. 329-91 at 13-14, ¶ 10 - SA Leyva's WDWA SW Affidavit.

The government next contends on page 22 of its opposition that the search warrant permitted the search of the locked safes, claiming the warrant authorized law enforcement to enter locked containers. But the warrant said no such thing. The warrant doesn't mention containers, let alone safes. Doc. 340-1. And law enforcement officers knew there were two safes on the premises before the warrant was obtained but not seek permission to search them. Docs. 217-1 at 5-6; 340-3 at 7. While as a general proposition containers situated within a residential premises which is the subject of a validly issued warrant may be searched, that only holds

true if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant. The items enumerated in the search warrant, such as trace evidence and weapons, were specifically related to the crimes being investigated: attempted murder, possession of a weapon for an unlawful purpose and armed robbery. The warrant did not mention the safes, controlled substances or drugs, even though the law enforcement was searching for so-called motive evidence. This is telling on the issue of whether it was reasonable for law enforcement to believe it was authorized to search the two locked safes for the items specified in the warrant. It was not reasonable, particularly where the warrant authorized the searching officers to search and open electronic-related devices, such as cellular telephones, but is silent about the known two safes.

Additionally, Earl adopts Washington's arguments against the search of the safes made in his reply. Doc. 386 at 11-14.

## **LEON - GOOD FAITH**

Finally, the government contends on pages 23-24 of its opposition that the good faith exception in *United States v. Leon,* 468 U.S. 897 (1984) applies even if the warrant did not authorize a search of the two safes. But as Washington persuasively argued in his reply, the government's reliance on [*Leon*] is misplaced. Doc. 386 at 14. The good faith exception does not apply where a warrant is so defective that no reasonable law enforcement officer would rely upon it. *United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002). Here, even though the underlying

"certification in lieu of oath in support of search warrants" (akin to an affidavit) discloses the two safes on the premises, Doc. 217-1 at 7, the safes are not even mentioned in the warrant. Thus, law enforcement was fully aware the issuing judge knew about the safes but did not authorize their search. The failure to so authorize completely undercuts any claim that law enforcement could reasonably believe the search warrant permitted the locked safes to be opened to look for evidence. (Compare the warrant's express authorization to open electronic devices.)

## CONCLUSION

Earl has standing to challenge the search of 10 Center Street, including the safes. The search warrant did not authorize the search of the two locked safes, and thus the good faith exception in *Leon* is inapplicable because it was unreasonable for law enforcement to believe otherwise. The Court should suppress all evidence seized from the two locked safes.

Respectfully submitted,

*/s/ Steven H. Sadow*
Steven H. Sadow
Georgia Bar No. 622075
Attorney for Defendant

260 Peachtree Street, N.W.
Suite 2502
Atlanta, Georgia 30303
404-577-1400
stevesadow@gmail.com

7

        BANKS WEAVER LLC
*/s/ Gabe Banks*
Gabe Banks
Georgia Bar No. 721945
Attorney for Defendant

100 Peachtree Street, NW
Suite 2650
Atlanta, Georgia 30303
404-891-9280 (Phone)
404-891-9283 (Fax)
gabe@banksweaver.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system that will automatically send e-mail notification of such filing to all parties of record.

*/s/ Steven H. Sadow*
Steven H. Sadow