IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | INDICTMENT NO. |
| v. ) | 1:23-cr-00335-MLB-RGV-1 |
| ) | |
| MARIO JAMES EARL, et al. ) | |
| ) | |
| Defendant. ) | |

## AMENDED REPLY BRIEF[1]
## IN SUPPORT OF HIS MOTION TO SUPPRESS

**COMES NOW** Defendant Mario James Earl in the above-styled criminal action, by and through his counsel, and hereby files this "Reply Brief in Support of His Motion to Suppress." In support of his motion, Mr. Earl would show this Honorable Court as follows:

### STALENESS

The government contends that Mr. Earl's motion to suppress fails to appreciate Eleventh Circuit precent governing searches of "residences and drug

---

[1] As a threshold matter, because the affidavit in support of the warrant to search Mr. Earl's Settle properties and vehicle relies, in part, on allegations stemming from the search of 10 Center Street, this Court must first resolve Mr. Earl's motion to suppress related to that search. If granted, all information derived from 10 Center Street referenced in the affidavit in support of the warrant(s) targeting Mr. Earl's Seattle property must be excluded from the Court's consideration.

**BANKS WEAVER LLC ׀ 100 Peachtree Street, NW, Suite 2650
Atlanta, Georgia 30303**

dealers" as well as the extent of his and Johnson's drug trafficking activities. (Doc. 338 at p. 3). Ironically, the government fails to appreciate Eleventh Circuit precedent related to staleness. To be sure, the Eleventh Circuit has repeatedly held that the staleness doctrine "requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." *United States v. Touset*, 890 F.3d 1227, 1237-38 (11TH Cir. 2018) (quoting *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11TH Cir. 2000)). There is no "talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate." *United States v. Domme*, 753 F.2d 950, 953 (11TH Cir. 1985). Instead, courts will look to the unique facts and circumstances of each case to determine whether the information presented is timely. *Id.* When doing so, courts "may consider the maturity of the information, nature of the suspected crime [ ], habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Id.*

Here, according to the affiant's own chronology, the alleged narcotics activity described in the affidavit spans from approximately December 2021 through September 2022. In fairness to Mr. Earl, the last alleged narcotics activity that the agent's affidavit contends he was involved in occurred on or about July 7, 2022, i.e., the date officers searched the 10 Center Street address. However, officers did not apply for or execute the search warrant for Mr. Earl's Seattle properties until January

19, 2024. Thus, there is **nearly a 20-month gap** between the time of the last alleged narcotics activity attributed to Mr. Earl and the date officers executed the searches of his Seattle properties. Moreover, the only thing that the agent's affidavit points to between this nearly 20-month gap to presumably "freshen up" and/or ripen the extremely outdated alleged narcotics activity is the surveillance conducted by agents of Mr. Earl and his girlfriend (Elisha Johnson) in mid-December 2023 to January 2024. During that surveillance, agents observed Mr. Earl and Ms. Johnson frequenting their home (Target Premise #1) and Mr. Earl's office (Target Premises #2), as well as observing Mr. Earl drive the White Cadillac Escalade.

Importantly, nothing[2] in the affidavit reflects that agents observed Mr. Earl (or Ms. Johnson for that matter) engage in any illicit narcotics activity. To be clear, the staleness problem is especially acute because the affidavit offers no facts whatsoever tying Mr. Earl's residence, office, or white Cadillac Escalade to any of the alleged narcotics transactions. Instead, the affidavit merely places Mr. Earl at those locations in the most generic sense—that he resides in one, works in the other, and drives the vehicle. As will be discussed in more detail below, a defendant's involvement in criminal activity alone does not create probable cause to search the defendant's home or other property absent some factual nexus linking the location to the illegal

---

[2] Even the reference to alleged fraudulent check stubs lacks any specificity concerning where said stubs were made and most importantly when they were made.

**BANKS WEAVER LLC ∣ 100 Peachtree Street, NW, Suite 2650**
**Atlanta, Georgia 30303**

conduct. *See United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (*citing United States v. Marion*, 238 F.3d 965, 969 (8TH Cir. 2001)(holding that search warrant affidavits should demonstrate not only a connection between the defendant and the residence but also a link between the residence and the criminal activity).

In sum, the affidavit's outdated, unrefreshed information—**_nearly 20-month gap_**—was too stale to establish a fair probability that evidence of a crime would be found at Mr. Earl's residence or office and/or inside his vehicle at the time the warrant was issued. This is true even if the court accepts as true the agent's assertions that Mr. Earl was involved in the drug trafficking activities between December 2021 through July 2022. Accordingly, the magistrate lacked a timely and adequate factual basis to conclude that probable cause existed at the relevant time, the warrant was invalid, and all fruits of the resulting search must be suppressed.

## INSUFFICENT NEXUS

The government's reliance on select portions of its cited authorities is little more than cherry-picking. It quotes only the language favorable to its position while ignoring the very holdings that undermine its argument, resulting in an incomplete and misleading account of controlling precedent.

For instance, in opposing Mr. Earl's motion to suppress, the government quotes *Kapordelis* for the proposition that "there need not be an allegation that the illegal activity occurred at the location to be searched." (Doc. 388, at 4). But the

government omits critically qualifying language. *Kapordelis* actually states that although the illegal activity need not occur at the location, "the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." 297 F.3d at 1310. That full context defeats the government's reading.

The same flaw appears in the government's reliance on *Meryl*. The government argues that the affidavit here, like in *Meryl*, established probable cause. (Doc. 388, at 4). But, the *Meryl* decision supports the opposite conclusion. There, the affidavit tied the defendant's drug activity to his home by noting that he was at his residence before and after controlled buys and that he lacked "some other base of operations." 322 F. App'x at 874. Those essential links are entirely absent here.

Indeed, the agent's affidavit—and the government's theory—collapses under its own logic. It portrays a highly sophisticated, multi-state narcotics organization employing stash houses, layered distribution networks, coded communications, and counter-surveillance to avoid detection. Yet, the government simultaneously asks this Court to believe that this same operation—and the DTO's alleged sophisticated leader—abandoned all operational security by storing drugs, ledgers, or proceeds in Mr. Earl's personal residence or office. The positions simply cannot be reconcilable.

Sophisticated traffickers do not store contraband in locations easily traced to individual members; that is the purpose of using stash houses and intermediaries.

Importantly, this conclusion is not derived from interpreting the agent's affidavit in a "hypertechnical manner;" rather, this conclusion based on reason and commonsense. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). In fact, the affidavit itself acknowledges the organization's use of multiple stash locations—an admission fatal to the government's claim that evidence would likely be found in Mr. Earl's home or office. Without any factual nexus—no surveillance, no controlled buys, no witness statements, no observed deliveries, no intercepted communications, no evidence of the defendant leaving or returning to these locations before or after drug transactions—the affidavit offers only a contradiction: the operation is too sophisticated to expose its participants except when the government needs it not to be.

The government's effort to salvage[3] an affidavit that is both chronologically stale and devoid of any meaningful nexus between Mr. Earl's Seattle properties or his vehicle and alleged narcotics activity appears to rest on a single, fragile thread: Paragraph 41's reference to the alleged creation of fraudulent check stubs. According to the government, Mr. Earl and his co-defendants purportedly used a business—

---

[3] Placed in its proper context, the government's entire argument rests on a single paragraph buried within a 92-paragraph, 42-page affidavit, i.e., a solitary sliver of text that cannot salvage an otherwise fatally deficient showing of probable cause. To be clear, this isolated scrap of information is nowhere near enough to resurrect an affidavit otherwise devoid of a nexus or timely evidence.

6 | P a g e

MCM Realty Investments LLC—whose listed address corresponds to Mr. Earl's office to fabricate check stubs, and this tenuous association supposedly justifies a belief that evidence of drug trafficking would be found at that location. Even if the Court credited the government's assertion for the purposes of this motion, the affidavit is wholly silent as to when these check stubs were allegedly created or whether they would reasonably be expected to remain at Mr. Earl's office at the time of the warrant's execution. This absence of temporal specificity is fatal. Without any indication of when the check-stub activity allegedly occurred, the issuing judge had no basis to infer that such materials would still be on the premises weeks or months later.

Again, this conclusion is not derived by interpreting the agent's affidavit in a "hypertechnical manner;" rather, this conclusion is based on reason and commonsense. 462 U.S. at 238. It defies logic—and basic criminal self-preservation—to suggest that a sophisticated narcotics conspiracy would go to the trouble of creating fraudulent documents as part of its illegal operations only to preserve those same documents in a place where law enforcement could later discover them. The very purpose of fabricating records in the context of drug trafficking is to **avoid detection**, not to maintain a paper trail that would expose the conspiracy. Far from supporting probable cause, the government's theory requires the Court to assume that individuals engaged in high-risk, clandestine criminal

activity intentionally stored incriminating, falsified documents for future officers to uncover. Such an assumption is not only speculative; it is antithetical to the way narcotics conspiracies operate and therefore cannot provide a reasonable basis to believe that evidence would be found at Mr. Earl's Seattle home or office **_nearly 20 months later_**.

In short, there is no factual bridge linking Mr. Earl's home, office, or vehicle to alleged drug activity and no temporal facts suggesting that relevant documents and other evidence would be found there at the time of the search. Accordingly, the warrant lacked probable cause on its face, and the fruits of the subsequent search must be suppressed.

## LEON

Finally, the government contends that the good faith exception in *United States v. Leon,* 468 U.S. 897 (1984) applies even if the warrant application lack probable cause. The government's reliance on *Leon* is misplaced. The good faith exception does not apply where a warrant is so defective that no reasonable law enforcement officer would rely upon it. *United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002).

Here, not only did the affidavit rely on stale information it also failed to establish a nexus between the alleged illicit drug activity and Mr. Earl's Seattle properties and vehicle. As such, the affidavit was so lacking in indicia of probable

8 | Page

cause as to render official belief in its existence entirely unreasonable. *United States v. Martin*, 297 F.3d at 1313.

**WHEREFORE**, Mr. Earl respectfully requests that this Court recommend that his motion to suppress be granted and that all evidence obtained from the search of his Seattle Properties and vehicle should be suppressed

Respectfully submitted this the 1ST day of December, 2025.

        **BANKS WEAVER LLC**

        */s/ Gabe Banks*
        Gabe Banks
        Georgia Bar No. 721945
        Tennessee Bar No. 021377
        *Attorney for Defendant*

100 Peachtree Street, NW
Suite 2650
Atlanta, Georgia 30303
404-891-9280 (Phone)
404-891-9283 (Fax)
gabe@banksweaver.com

        */s/ Steven H. Sadow*
        Steven H. Sadow
        Georgia Bar No. 622075
        *Attorney for Defendant*

260 Peachtree Street, N.W.
Suite 2502
Atlanta, Georgia 30303
404-577-1400
stevesadow@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | INDICTMENT NO. |
| v. | ) | 1:23-cr-00335-MLB-RGV-1 |
| | ) | |
| MARIO JAMES EARL, et al. | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification to all parties of record.

Dated: December 1, 2025.

**BANKS WEAVER LLC**

*/s/ Gabe Banks*
_____
Gabe Banks
Georgia Bar No. 721945
Tennessee Bar No. 021377
*Attorney for Defendant Mario James Earl*

100 Peachtree Street, NW, Suite 2650
Atlanta, Georgia 30303
404-891-9281 (ofc.) ׀ 404.891.9283 (fax)
gabe@banksweaver.com