**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>  Plaintiff, | : | |
| vs. | : | 1:23-cr-335-MLB-RGV |
| MARIO JAMES EARL<br>  Defendant. | : | |

---

**EARL'S OBJECTIONS TO THE REPORT AND RECOMMENDATION**

---

Pursuant to 28 U.S.C. § 636(b)(1), Defendant Earl formally objects to the Magistrate Judge's Report and Recommendations (R&Rs) [Docs. 422:2] which recommended Earl's motion to adopt as to 6470 Wright Circle, [Doc. 254], be denied, and Earl's motions to suppress the search at Wright Circle and 10 Center Street, [Doc. 216, 217, & 252], be denied.  Earl objects generally based on the legal analysis and conclusions presented in the motions, [Docs. 216, 252], and reply brief, [Doc 396], which are incorporated herein and made a part hereof.  Specifically, Earl objects with particularity to the following:

<u>**Objection One**</u>

I.    **Search of 6470 Wright Circle, Sandy Springs, Georgia - the R&R's standing analysis fails to apply the controlling Eleventh Circuit factors.**

1

Citing *United States v. Hernandez-Martinez*, CRIMINAL ACTION NO. 1:07-CR-356-TWT-CCH, 2008 WL 11443130, at \*3 (N.D. Ga. Aug. 25, 2008), adopted by 2008 WL 11443120, at \*1 (N.D. Ga. Oct. 7, 2008), the Report finds that "even if Earl was previously an overnight guest at 6470 Wright Circle, he failed to show that he was an overnight guest "at the time the residence was searched[.]" [Doc. 422 at 17, ¶ II (A) (1)].    Preliminarily, *Hernandez-Martinez* was distinguishable because three defendants there failed to introduce evidence to support their property interests or status as an overnight guest, unlike Earl, who supported his subjective privacy expectation and property interests in this address. *See* [Doc(s). 324, 254-2-6, 329-1-93].   Rejecting Earl's standing, the Report does not analyze the Eleventh Circuit factors, each of which favored Earl's standing at 6470 Wright Circle.   Earl therefore **OBJECTS**.

"While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of the inquiry." *United States v. Salvucci*, 448 U.S. 83, 92, (100 S.Ct. 2547) (1980) (citation omitted).   "Other factors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy,

2

and whether he was legitimately on the premises." *United States v. Bushay*, 859 F.Supp.2d 1335, 1362 (N.D. Ga. 2012) (citing *United States v. Pitt*, 717 F.2d 1334, 1337 (11th Cir. 1983)).  The Report did not analyze these factors.

These factors show that Earl proved *more* standing than a mere overnight guest.  First, Earl established a property interest in 6470 Wright Circle because receipts showed that he purchased furniture for this residence, [Doc. 324 at 17-18]; [Doc. 329-71-72] and paid for consistent cleaning services.  [Doc. 324 at 31-32]; [Doc(s). 329-62-63].  Likewise, evidence showed without contradiction that Lynch (owner) granted to Early both a key and unfettered access to 6470 Wright Circle, and that Early used said access to facilitate routine lifestyle activities, such as the nearby gym and drycleaners.  It is undisputed that Early was legitimately on the premises during the periods that he was present and that Earl as a resident took no action to reduce his privacy expectation at this address.

Factually, the Report errs in construing the timeline—it omits evidence of a newspaper article, dated November 10, 2022, that was found in the trash can.  [Doc. 324 at 69].  This narrowed the time that 6470 Wright Street was unattended for approximately 3 months (Nov. 2022 to March, 2023) as opposed to "2021 and 2022 to March 2, 2023."  [Doc. 422 at 17].

Earl's long-term friendship with Lynch was not commercial, *Minnesota v. Carter*, 525 U.S. 83, 89-90 (1998), and Earl's evidence of consistent ties to 6470

3

Wright Circle for over one year proved that Earl was not merely an overnight guest, nor merely present with consent of the homeowner. *Rakas*, 439 U.S. at 128. To the contrary, that Earl purchased furniture for this residence, invited guests there, and consistently used amenities in near proximity to the house, [Doc. 324 at 20], all supported that Early used 6470 Wright Circle as his residence. *See generally New York v. Burger*, 482 U.S. 691, 700 (1987) ("An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home."). The Report cites no case that supported Earl's forfeiture of his otherwise reasonable privacy expectation in an address formerly used as his home.

Despite these four factors, the Report finds no standing. It erroneously imported the "abandonment" concept into the threshold standing analysis. *See e.g.*, *United States v. Ross*, 963 F.3d 1056 (11th Cir. 2020) (en banc). In *Ross*, the Eleventh Circuit en banc overruled *United States v. Sparks*, 806 F.3d 1323 (11th Cir. 2015) and held that abandonment is procedural argument that does not affect Fourth Amendment standing, and that the same can be waived by the government's failure to pursue it. *Ross*, 963 F.3d at 1063-65 (citing *United States v. Garay*, 938 F.3d1108, 1111 (9th Cir. 2019) & *United States v. Dyer*, 580 F.3d 386 (6th Cir. 2009)). Thus, standing is the threshold issue, whereas abandonment is procedural. Here, the

government did not argue that Earl took affirmative steps to abandon his Fourth Amendment standing, waiving this issue. *Ross*, 963 F.3d at 1064.

Although it did not use "abandonment" directly, the Report's analysis practically found that Earl had, in the past, demonstrated a privacy expectation at 6470 Wright Circle that society would accept as reasonable, but that Earl implicitly abandoned this privacy expectation by leaving this residence unattended for an unknown period, at an unknown time, and for an unknown purpose. [Doc. 422 at 17]. Not so. This was error under *Ross*. Under *Ross*, "abandonment" was not germane to the Earl's evidence of Fourth Amendment standing, a threshold question.

### Objection Two

II. **Search warrant for 10 Center Street, New Jersey - the overbroad execution of MS-BER-SW-22 was not supported by a probable cause nexus to the safes.**

The R&R correctly concludes that Earl had standing to challenge the search of 10 Center Street. [Doc. 422 at 42-43]. However, it errs in its assessment of the scope of search warrant MS-BER-SW-22. *See* [Doc. 340-1]. Specifically, the certification's description of the attempted armed robbery of Palacios did not support a nexus to search the locked safes within the home. [Doc. 340-3].

The Report errs in its inference that "the search of the safes was supported by probable cause since the safes were a central part of the affidavit submitted in support of the search warrant and appeared to be the object of the criminal

conduct[.]" [Doc. 422 at 55]. Neither MS-BER-SW-22 nor its certification stated this, [Doc(s). 340-1 & 340-3], the Report infers it. However, this inference was not supported by the four corners of MS-BER-SW-22 nor its supporting documents because the warrant did not mention safes; the target items particularized were electronic devices; and it was not reasonably likely that evidence of Palacios's attempted armed robbery or a dead body would be found within the locked safes.

Accordingly, the Report's citation to *United States v. Lewis*, CR 23-143-BLG-SPW, 2025 WL 2777579, at *3 (D. Mont. Sept. 29, 2025) does not support its overbreadth analysis. In *Lewis*, the location of a dead body provided sufficient probable cause to search the trailer "where the body was discovered." *Id.* Unlike the present case, *Lewis* did not hold that the discovery of the body and evidence of foul play allowed agents to search locked containers within the trailer that were not capable of hiding a decedent. *Lewis* was inapposite. Although the Report relies on cases generally holding that "a search may be extensive as reasonably necessary as required to locate the items described in the warrant," [Doc. 422 at 56], therein lies the error: the locked safes were *not described in the warrant*.

Furthermore, *United States v. Folk*, 754 F.3d 905, 911 (11th Cir. 2014) did not authorize the search of the locked safes because the firearms in that case were discovered "in plain view," during a protective sweep of a closet. Though *Folk* cited *United States v. Martinez*, 949 F.2d 1117 (11th Cir. 1992) for the proposition that

6

"officers are 'permitted to break open locked containers which may contain the objects of the search[,]" *Martinez* cautioned that "general permission to search does not include permission to inflict intentional damage to the places or things to be searched." *Id.* The Report disregards that intentional property damage was caused when the executing officers forced open the safes—the locked nature of these safes enhanced the defendants' privacy expectation in their contents. Because only the *victim* of the attempted murder was located at 10 Center Street, it was not reasonable that evidence showing the *perpetrator*'s identity would be located within the safes.

Significantly, the cases *Martinez* relied upon for law enforcement's authority to "break open" containers were factually distinguishable—those search warrants targeted items and crimes that are commonly found in safes, or where safes are commonly used. *See United States v. Gonzalez*, 940 F.2d 1413, 1420 (11th Cir.1991) (valid warrant to search defendant's house for documents and currency authorized police to search locked briefcase found in house); *United States v. Morris*, 647 F.2d 568, 572–73 (5th Cir. Unit B 1981) (valid warrant to search defendant's home for proceeds of bank robbery authorized search of locked jewelry box). By contrast, MS-BER-SW-22's target crime of "attempted murder" did not commonly involve the use of safe, and the certification sought electronic device evidence to establish the identity of an armed robbery perpetrator not alleged to be located at 10 Center Street. Palacios was a *victim*.

The fact that the affiant knew of the safes at the time of his certification yet focused MS-BER-SW-22 on electronic devices and trace evidence of the attempted murder supported *unreasonableness* as to the warrantless search of the locked safes. *See* [Doc. 396 at 6].  The Report did not engage Earl's argument in this respect, which was advanced in the reply brief.  *Id.*  Earl also **ADOPTS** the objections submitted by co-defendant Washington to the Report's analysis of the MS-BER-SW-22 search warrant materials and opening of the locked safes.

## CONCLUSION

For the foregoing reasons, Earl **OBJECTS** to the Magistrate Judge's R&R denying his motions to suppress, and requests this Court to **DECLINE TO ADOPT** the same as the judgment on these issues. Instead, Earl requests this Court hold (1) he has standing to challenge the Wright Circle search and that the search itself was illegal and (2) the execution of the 10 Center Street search warrant was overbroad and suppress the contents of the illegal search of the safes.

Respectfully submitted,

*/s/ Steven H. Sadow*
Steven H. Sadow
Georgia Bar No. 622075
Attorney for Defendant

260 Peachtree Street, N.W.
Suite 2502
Atlanta, Georgia 30303
404-577-1400
stevesadow@gmail.com

BANKS WEAVER LLC
*/s/ Gabe Banks*
Gabe Banks
Georgia Bar No. 721945
Attorney for Defendant

100 Peachtree Street, NW
Suite 2650
Atlanta, Georgia 30303
404-891-9280 (Phone)
gabe@banksweaver.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system that will automatically send e-mail notification of such filing to all parties of record.

*/s/ Steven H. Sadow*
Steven H. Sadow

9