**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

United States of America,

v. Case No. 1:23-cr-335-MLB

Mario J. Earl (1),

Defendant.

________________________________/

# ORDER

Defendant Mario Earl moves to suppress evidence seized from a vehicle and two residences. (Dkts. 215, 259.)[1] The Court adopts the Magistrate Judge's Report and Recommendation (Dkt. 428) and denies Defendant Earl's motion.

## I. Background

This case arose from a nationwide drug-trafficking investigation.

[1] Defendant Earl also moved to suppress the search of a home in Fairburn, Georgia, a storage unit in Kirkland, Washington, and a phone with a 206-area code. (Dkt. 216.) Despite requesting and receiving an extension of time to "perfect" that motion (Dkts. 262, 278), Defendant Earl never did so. The Magistrate Judge recommended the Court deny that motion, and the Court did so. (Dkt. 458 at 29.)

Law enforcement executed search warrants at various locations in Georgia, Maryland, New Jersey, North Carolina, and elsewhere. (Dkt. 252-1 ¶¶ 21, 26, 33, 48, 49.) Agents identified Defendant Earl as the leader of the organization and learned that he used stash houses throughout the United States to store kilogram-quantities of cocaine, distribute the cocaine, and store proceeds from the transactions. (Dkt. 215-2 ¶ 6.) As part of the investigation, agents obtained warrants to search several homes throughout the United States and seized evidence of Defendant Earl's his co-conspirator's involvement in the illegal activity. (*Id.* at ¶¶ 9-14, 17, 20-28.) The United States obtained an indictment against Defendant Earl and several others for violating federal drug laws. (*Id.* ¶ 31.) After that, law enforcement obtained a warrant to search a home located at 11527 113th Place in Kirkland, Washington (which the warrant referred to as Defendant Earl's residence); an office located at 5416 Ranier Avenue in Seattle, Washington (which the warrant referred to as Defendant Earl's office), a White Cadillac Escalade with license plate CFC6626 (which was registered to Defendant Earl), another car, and three other homes. (Dkt. 215-1 ¶¶ 40, 44.)

Defendant Earl moves to suppress searches of the 113th Place residence, the Ranier Avenue office, and the Cadillac Escalade, arguing the warrant application did not establish a sufficient nexus between the alleged drug crimes and those places and, alternatively, that the information in the application was stale. (Dkt. 215.) The Magistrate Judge issued a report and recommendation concluding the information was not stale and the warrant established probable cause for the searches. (Dkt. 428.) So, he recommends the Court deny Defendant Earl's motion to suppress. (*Id.*) Defendant Earl filed objections. (Dkt. 449.)

## II. Standard of Review

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made." Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th Cir. 2020)[2]; *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009)

[2] The Court recognizes *McCullars* is unpublished and not binding. The Court cites it and other unpublished cases as instructive, nonetheless. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th

("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). A court must conduct a plain error review of the record for findings and recommendations to which a party has not asserted objections. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983). "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).

## III. Discussion

Defendant Earl objects to the Magistrate Judge's conclusion that the warrant application established probable cause to search his home, office, and car; that the information was not prohibitively stale for the warrant in January 2024; and that the good-faith exception to suppression would apply anyway. (Dkt. 449.) The Court overrules each objection.

### A. The Warrant Application Established Probable Cause

"The Fourth Amendment requires that a search warrant be issued

---

Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested." *United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir. 1984) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 558 (1978)). Probable cause exists when under the "totality of the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). In other words, a search warrant is supported by probable cause if the supporting affidavit establishes "a connection between the defendant and the location to be searched; . . . a link between the location and criminal activity; and . . . the informant's veracity and basis of knowledge." *United States v. Davis*, 313 F.3d 1300, 133 (11th Cir. 2002). "[A] police officer's expectation, based on prior experience and the specific circumstances of the alleged crime, that evidence is likely to be found in a suspect's residence satisfies probable cause." *United States v. Bradley*, 644 F.3d 1213, 1263-64 (11th Cir. 2011).

Defendant Earl objects to the Magistrate Judge's conclusion that the warrant affidavit established probable cause to search his home, office, and car. (Dkt 449.) He claims that—because the warrant failed to

allege law enforcement saw drugs, drug proceeds, or instrumentalities of drug trafficking at those locations, conducted any controlled buys at those locations, or received information from confidential informants, intercepted communications, or surveillance tying any alleged criminal conduct to those locations—the warrant affidavit merely alleged Defendant Earl lived at the Kirkland address, had an office at the Rainier Avenue location, and drove the Cadillac Escalade. (Dkt. 449.) He contends the affidavit merely establishes his involvement in the illegal conspiracy but that "a defendant's alleged involvement in criminal activity alone [does not justify] the search of his residence." (Dkt. 449 at 3.) This merely repeats the argument he made before the Magistrate Judge (Dkt. 215 at 16) without engaging with the Magistrate Judge's conclusion that the other evidence in the affidavit established probable cause to support the searches.

Defendant Earl fails to consider the scope of the affidavit allegations establishing his involvement in a nationwide drug trafficking conspiracy that used stash houses throughout the country, success agents had in gathering evidence from the searches of other houses, and the connection between Defendant Earl, a codefendant, and the house,

office, and car. The affidavit first established probable cause to believe Defendant Earl was a leader of the drug trafficking organization. This included evidence that Defendant Earl used associates to move money and drugs to and from stash locations. (Dkt. 215-2 ¶ 6-8.) The affidavit, for example, explained that Elisa Johnson was a member of the organization. (*Id.* ¶ 9.) She rented a home in New Jersey at which law enforcement executed a warrant and found safes containing three kilograms of cocaine, a gun, vacuum sealers and bags, and documents containing her name, Earl's name, and the names of two other members of the organization. (*Id.*) Also, inside the home, law enforcement found a Starbucks coffee that Defendant Earl had purchased earlier that day, meaning he had been in the house when the drugs and other evidence of drug trafficking was there. (*Id.*) Law enforcement also found some of Defendant Earl's medication, documents identifying other stash houses in New Jersey, and hand-written drug ledgers indicating the use of various stash houses and documenting the collection of more than $8 million from a cocaine customer between February 2022 and May 2022. (*Id.* ¶¶ 13-15.) During a search of a home in Fairburn, Georgia, agents found 2 kilograms of cocaine, 2 guns, more drug ledgers, $112,000 in cash,

documents tying Earl, Johnson, and others to the home (including Delta luggage tags for flights Earl and Johnson had taken, Defendant Earl's medication, and packages addressed to him). (*Id.* ¶ 17.) Agents tracked Johnson's phone and found several other stash houses where the organization stored drugs and money. (*Id.* ¶ 19.) At one, agents found 6 guns, vacuum sealers and bags, drug and money ledgers, and $710,000 in a secret compartment of a car parked in the garage. (*Id.* ¶ ¶ 20-21.) Agents executed warrants at several other stash houses, including three in New Jersey (where agents found several firearms, $1.6 million in cars with secret compartments, drug ledgers, and vacuum sealers) (*Id.* ¶¶ 23-24); one in North Carolina (where agents found eight kilograms of cocaine, $175,000 in cash, a large safe, vacuum sealers, and drug ledgers) (*Id.* ¶ 27); one in Sandy Springs, Georgia (where agents found drug ledgers, vacuum sealers, electronic devices showing communication between members of the conspiracy, and lots of paperwork identifying members of the conspiracy) (*Id.* ¶ 28). Agents also obtained evidence showing Defendant Earl received cash deposits into his bank accounts in amounts indicative of efforts to avoid cash-transaction reporting requirements. (*Id.* ¶ 30.) This is to say there was plenty of evidence in

the warrant application to establish Defendant Earl's involvement in a large, successful cocaine distribution organization, the group's use of stash houses to further operations, and the group's retention of evidence of their illegal activity in those homes.

The affidavit then tied Defendant Earl and Johnson to the two locations at issue. The affidavit established Earl and Johnson were living at the Kirkland location at the time of the search and working from the Ranier Drive office. (*Id.* ¶¶ 32, 35, 36-40.) The warrant also tied the office to the illegal activity, particularly showing that when Johnson rented stash houses around the country, she used fake pay stubs from "MCM Realty Investments" that included the Ranier Drive location as her office and Defendant Earl as her supervisor. (*Id.* ¶ 41.) Public records showed Earl owned the building, containing three offices, including the one at issue. (*Id.* ¶ 42.) Tracking data also showed Defendant Earl and Johnson moved between the Ranier Drive location and Kirkland residence as if using them as an office and a home. (*Id.* ¶ 44.) The affidavit also established that Defendant Earl regularly drove the Escalade.

The affiant added his experience-based reason to believe that

people involved in drug trafficking keep—at their homes—things like ledgers tracking the sale of drugs and collection of money, cell phones containing evidence of drug trafficking, considerable money, tools of drug trafficking (like scales and packaging materials), other communications about drug trafficking, firearms, previously used phones, and electronic devices containing evidence of drug trafficking. (*Id.* ¶ 79(a)-(l).) He added a related allegation about Defendant Earl's organization: explaining that "in virtually every . . . stash house [of the organization] where agents have executed search warrants, documents and cell phones have been seized, almost all of which contained evidence of the [the organization's] operations." (*Id.* ¶ 71.) He thus opined that these searches would produce the same evidence. (*Id.*) Finally, the affidavit established that Defendant Earl was convicted in 2009 for conspiring to distribute marijuana, that he ran a sophisticated interstate marijuana trafficking ring at the time, and that when officers searched his home they found distribution quantities of marijuana, a magazine for an assault rifle, ammunition, fraudulent identification documents, and a secret room specially constructed to evade casual detection and store marijuana. (*Id.* fn 8.)

This provided probable cause to believe evidence of the organization's drug distribution would be found in Defendant Earl's home, office, and car. And not just because he was a member of the organization. But also because this particular organization kept identifiable evidence of drug distribution at nearly every other location and Defendant Earl had done so in the past. *United States v. Lisbon,* 835 F.Supp.2d 1329, 1350 (N.D. Ga. 2011) ("The affidavit clearly established that [the defendant] had committed violations of 21 U.S.C. §§ 841 and 846. The affidavit further demonstrated that the W. Ponce apartment was one of [the defendant's] residences. [The affiant] had extensive experience in investigating drug traffickers and averred that the residence was a likely hiding place for contraband and evidence of Lisbon's crime. These combined facts would warrant a person of reasonable caution to believe that a search of [the defendant's] home would uncover evidence of [drug trafficking].") (quoting *United States v. Jenkins*, 901 F.2d 1075 (11th Cir. 1990).

**B. The Probable Cause Information Was Not Stale**

Defendant Earl also objects to the Magistrate Judge's conclusion the warrant was not stale. He argues (1) the warrant contains no

evidence he was involved in drug trafficking after September 2022—fifteen months before the January 2024 warrant and (2) the Magistrate Judge erred in relying on the "longstanding and protracted" nature of the conspiracy because any such conduct ended in July 2022. (Dkt. 449 at 5.)

The law precludes reliance upon stale or outdated information. "For probable cause to exist . . . information supporting the government's application for a search warrant must be timely, for probable cause must exist when the magistrate judge issues the search warrant." *United States v. Harris,* 20 F.3d 445, 450 (11th Cir. 1994); *see also United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000) ("[I]nformation supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues."). "No mechanical tests exist for deciding whether information is too stale to support a warrant." *United States v. Rau*, 2020 WL 7488649, at *4 (N.D. Ga. Dec. 20, 2021). "Rather, staleness is an issue which must be decided on the peculiar facts of each case." *Id.* (quoting *Bervaldi*, 226 F.3d at 1264). In doing so, courts should consider the "nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be

searched." *United States v. Harris,* 20 F.3d 445, 450 (11th Cir. 1994). "And courts should recognize the difference between isolated criminal activity (for which the passage of time is more likely to diminish probable cause) and protracted or continuous criminal activity (for which the passage of time is less likely to dissipate probable cause.)." *Rau*, 2020 WL 7488649, at *4. The Eleventh Circuit has explained that "[p]rotracted and continuous activity is inherent in large-scale drug trafficking operations [and in] such cases, then, the staleness issue should be construed liberally." *United States v. Bascaro*, 742 F.2d 1335, 1346 (11th Cir. 1984). In *United States v. Harris*, 20 F.3d 445 (1994), for example, the Eleventh Circuit concluded a gap of 18 months between the last "known act" of criminal activity in the indictment and the execution of the warrant did not render probable cause stale when the affidavit described a "longstanding and protracted criminal conspiracy." *Id.* at 451. As part of this, the Court of Appeals noted the affidavit suggested the defendant "maintained ongoing relationships with conspirators," including the presence of a coconspirator at the defendant's home. *Id.*

The affiant in this case established that Defendant Earl was part of a protracted and continuous drug organization that operated

throughout the United States.[3] As already explained, the affiant averred that law enforcement began investigating Defendant and his organization in 2021, found ledgers documenting extensive drug trafficking through May 2022, and executed warrants into September 2022. He also explained the organization operated in Fairburn, Georgia; Sandy Springs, Georgia; Baltimore, Maryland; Bergen County, New Jersey; Atlanta, Georgia; and Charlotte, North Carolina. And, while law enforcement arrested one member of the organization in July 2022, it took no other actions to dismantle the criminal organization. And there was some evidence of on-going activity. The affidavit established that Defendant Earl received cash deposits as late as February 2023 in a

[3] Defendant also moves to adopt six pages from objections Defendant Washington filed in regard to the search of a home at 10 Center Street in New Jersey (Dkt. 446) and twenty-three pages from objections that Defendant Lynch filed in regard to the search of a home at Wright Circle in Georgia (Dkt. 448). The Court does not really understand his arguments or how they apply to the searches at issue here. Defendant Earl's one-line adoption thus doesn't raise valid objections. And if he seeks to attack the warrant at issue here for relying on evidence obtained from those residences, the Court has already determined Defendant Earl lacks standing to contest the search of the Wright Circle residence (Dkt. 458 at 14-15) and has upheld the constitutionality of the Center Drive search (*id.* 28). The Court thus also denies Defendant Earl's motions to adopt as moot.

suspicious manner indicative of efforts to evade law enforcement detection, a common practice among drug traffickers. (*Id.* ¶¶ 29-30.) The warrant also established that Defendant Earl continued operating MCM Realty Investments—a company used to generate fake pay stubs for other members of the organization—at the time of the warrant. (*Id.* ¶¶41-42.) Given this, the Court overrules Defendant Earl's objection and adopts the Magistrate Judge's conclusion that the probable cause information was not stale.

### C. The Good-Faith Exception Applies Here

The good-faith exception to suppression—announced by the Supreme Court in *United States v. Leon*—prevents the suppression of evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *United States v. Leon*, 468 U.S. 897, 900 (1984). This good-faith exception applies in all but four circumstances: (1) where the issuing magistrate judge was misled by information in a warrant application the applicant knew was false or would have known but for reckless disregard for the truth; (2) where the magistrate "wholly abandoned" his or her judicial role; (3) where the

affidavit supporting the application was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) where the warrant was "so facially deficient" that officers couldn't have reasonably presumed it to be valid. *United States v. Taylor*, 935 F.3d 1279, 1291 (11th Cir. 2019) (internal quotation marks and citation omitted).

As an alternative holding, the Magistrate Judge concluded that, even if the warrant was defective, the good faith-exception to suppression would apply. (Dkt. 428 at 26.) Defendant Earl objects, focusing only on the third circumstance, arguing the nexus between Defendant Earl's alleged illegal activity and his home, office, and car was so lacking and the information so stale that no reasonable law enforcement officer could have thought the warrant valid.

The Court disagrees. The Court has already rejected these arguments upon its de novo assessment of the warrant. For the same reasons, the Court concludes law enforcement officers could have relied on the issuing judge's conclusion that the warrant established probable cause and subsequent decision to issue the warrant. Nothing would have alerted the officers to believe the issuing judge was wrong, negligent, or

disinterested in reaching that conclusion.[4]

### D. Defendant Earl is not Entitled to a *Franks* Hearing

A court may suppress a search if the warrant affiant deliberately or recklessly included false statements or failed to include material omissions that were essential to the finding of probable cause. *Dahl v. Holley*, 312 F.3d 1228, 1235 (11th Cir. 2002). To obtain a so-called *Franks* hearing and explore this issue, a defendant must "make a substantial preliminary showing that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006). Negligent misstatements or omissions are not enough to obtain a hearing. *United States v. Whyte*, 928 F.3d 1317, 1332 (11th Cir. 2019). "[E]ven in the face of a deliberate omission, no hearing is required when there was enough evidence to support a

[4] The good-faith exception does not apply if the affiant misled the issuing magistrate judge by including information in a warrant application the affiant knew was false or would have known but for reckless disregard for the truth. *United States v. Taylor*, 935 F.3d 1279, 1291 (11th Cir. 2019). As discussed below, there is no evidence that occurred here.

probable cause finding even after considering the effect of the omission." *United States v. Leonard*, 4 F.4th 1134, 1147-48 (11th Cir. 2021).

As part of the investigation, agents placed a pole camera outside the Ranier Avenue location. (Dkt. 215-2 ¶ 45.) The affiant stated that agents had reviewed video from that camera beginning in mid-December 2023 and ending in early January 2024. (*Id.*) The affiant further alleged the, while Defendant Earl is often at the location by himself, "others don't go in that door without him" and that agents "have seen other people enter [the office], but not without [Defendant Earl] or when [Defendant Earl] is already inside (the exception being [Defendant Johnson]." (*Id.*) Having reviewed the video, Defendant Earl alleges this statement was false because a man entered the office without Defendant Earl on January 8, 9, and 11, 2024. (Dkt. 408 at 4-5.) Based on that, Defendant Earl moved for a so-called *Franks* hearing to show the affiant included intentionally false information. (Dkts. 406, 408.)

The Magistrate Judge says this Court should deny that motion because Defendant Earl has not met his burden of proof for obtaining such a hearing. (Dkt. 428 at 32-33.) It does not appear Defendant Earl filed objections to that recommendation. And the Court agrees with the

Magistrate Judge's conclusions.

Defendant Earl presented no evidence that the affiant provided false information as to whether people entered the Raynier Place office without Defendant Earl. His reading of the affiant does not even suggest a reckless or deliberate misstatement. That's because the affiant said he only reviewed the pole camera through "early January 2024"—which is not inconsistent with Defendant's assertion that someone entered without Defendant Earl on January 8, 9, or 11. The Court does not believe those dates qualify as "early January," at least not enough to say the affiant misled the issuing judge. In addition, the affiant's statement that between mid-December 2023 and early January 2024 no one entered the office without Defendant Earl (except Defendant Johnson) was not necessary for probable cause. Among the other things discussed above, probable cause arose from the breath and scope of Defendant Earl's drug trafficking organization; its use of houses to store drugs, drug ledgers, and electronic devices containing evidence of drug trafficking; his use of MCM Realty at the Ranier Avenue location to manufacture paystubs to rent other houses; and its continued affiliation with both Defendant Earl and Defendant Johnson. That he had sole access to it for several weeks

just before the warrant application really does not factor into the probable cause analysis and not to such a degree that excluding that information would have defeated probable cause.

## IV. Conclusion

The Court **OVERRULES** Defendant Mario Earls's objections to the report and recommendation (Dkt. 449), **ADOPTS** the Magistrate Judge's report and recommendation (Dkt. 428), and **DENIES** Defendant Earl's motion to suppress the search of the residence located at 11527 113th Place in Kirkland, the office located at 5416 Ranier Avenue, and a White Cadillac Escalade with license plate CFC6626 (Dkt. 215, 259) and his motion for *Franks* hearing (Dkts. 406, 408). The Court **DENIES AS MOOT** Defendant Earl's motions to adopt (Dkts. 446, 448).

**SO ORDERED** this 6th day of November, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE